IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARCIA UNDERHILL,              :   CIVIL ACTION NO.
                               :   1:13-CV-2614-TWT-JSA
        Plaintiff,             :
                               :
    v.                         :
                               :
BANK OF AMERICA, N.A., *et al.*,  :   **ORDER AND FINAL REPORT AND**
                               :   **RECOMMENDATION ON A**
        Defendants.            :   **MOTION TO DISMISS**

Plaintiff Marcia Underhill, proceeding *pro se*, initiated this action by filing the

Complaint in the Superior Court of Fulton County on July 8, 2013, against three

Defendants: Bank of America, N.A. ("BANA"); Home America Mortgage,

Inc. ("HAM"); and Trey Inman & Associates, P.C. ("TIA"). On August 7, 2013,

Defendant BANA removed the action to this Court. *See* Notice of Removal [1].

Plaintiff claims that she is a homeowner and that the Defendants have improperly

foreclosed, or attempted to foreclose, on her property. The action is now before the

Court on the Motion to Dismiss [7] filed by Defendant TIA; the Motion to Dismiss [8]

filed by Defendant BANA; the "Plaintiff's Combined Motions; Motion to Remand to

State Action; Motion for an Extension of Time to Respond to Joint Motions to

Dismiss, by BOA and Trey Inman, P.C.; Plaintiff's Motion to Strike Joint Motions

and Briefs" [12] ("Motion to Remand"); and the "Plaintiff's Motion in Opposition

[sic] to Defendant's Motion to Dismiss and Plaintiff's Request to Amend Complaint" [18] ("Motion to Amend").

This case, to put it mildly, is odd. While Plaintiff resides in and claims ownership of the property, she was not the borrower on the mortgage used to purchase it. Rather, she had arranged for a more credit-worthy relative to serve as co-borrower. It turns out, however, that the loan documents were executed solely in the relative's name, and Plaintiff, somehow unbeknownst to her, did not sign any of the closing documents at all. Plaintiff now claims that she is the victim of fraud and other torts, because she has been living in a residence for the last six years purchased by a mortgage for which she is not the borrower, for which she has no financial liability whatsoever, and which she acknowledges she had insufficient credit to obtain in her own name. Plaintiff also acknowledges that the mortgage is in default.

For the reasons discussed below, the undersigned **RECOMMENDS** that the Defendants' Motions to Dismiss [7][8] be **GRANTED** and that the Plaintiff's claims against BANA and TIA be **DISMISSED**. In sum, the Court concludes that, as a matter of law, Plaintiff has failed to assert a plausible claim for relief under any of the theories presented in the Complaint.

The undersigned further **RECOMMENDS** that the Plaintiff's Motion to Remand [12] be **DENIED** and her Motion to Amend [18] be **DENIED**. Plaintiff's

request to strike the Defendants' Motions to Dismiss, which is contained in her Motion to Remand [12], is **DENIED**. Plaintiff's request for an extension of time in which to respond to Defendants' Motions to Dismiss, which is also contained in her Motion to Remand [12], is **GRANTED** *nunc pro tunc*.

## I.   BACKGROUND

On July 8, 2013, Plaintiff Marcia Underhill filed a "Verified Complaint for FHA Contract Torts, Wrongful Foreclosure Torts[,] TILA and FDCPA Debt Collection Torts" ("Complaint") in the Superior Court of Fulton County. *See* Complaint [1-1], attached to Notice of Removal [1]. The allegations set forth below are taken from the Plaintiff's Complaint.

Plaintiff alleges that she entered into a "purchase money sales agreement" on December 10, 2007, to purchase "the subject property." Compl. [1-1] at 4. Plaintiff states that she has lived on the "estate" located at 8556 Goswell Drive, Jonesboro, Georgia 30238 in Clayton County, Georgia (which the Court will refer to herein as the "Property"), at all times since the closing. *Id.* Defendant HAM was the original lender on Plaintiff's loan, and Defendant TIA was the closing attorney. *Id.* According to Plaintiff, Defendant BANA became the loan servicer after it replaced Taylor Bean & Whitaker ("TBW") as the loan servicer under an asset purchase agreement. *Id.* Plaintiff contends that BANA, acting through the law firm of Phelan Hallinan &

Jones, LLC ("PHJ"), attempted to foreclose on "a fraudulent FHA contract and eject the Plaintiff, the title holder, from her possession of the underlying subject property." *Id.* at 2.

Plaintiff purchased her property with the assistance of her relative, Michelle Young, who agreed to be a co-signer on the loan. *Id.* at 5. Plaintiff claims that, "unbeknownst" to her, she was "taken off the loan documents, but she was placed on title Quit Claim Deed and she was told that she would be one of the title holder's [sic] with mutual interest in the property." *Id.* According to Plaintiff, she "assumed the role as the primary mortgagor in all communication with the servicer until recent." *Id.* at 5-6. In the later part of 2011, Plaintiff became delinquent on the loan after she changed jobs. *Id.* at 6. It was only when she attempted to work out her "payment difficulties" that she discovered that "she was not considered a mortgagor for the servicer to process a loan modification." *Id.*

Plaintiff claims that several "torts" occurred at the December 10, 2007 closing of her loan, including: Michelle Young had been "assigned" her income and job description on the mortgage loan application; HAM underwriters approved Ms. Young's fictitious income and job information without verification; Plaintiff's original purchase contract and earnest money were applied to Ms. Young's loan closing; Plaintiff was told to use the Quit Claim Deed and file it to preserve her title interests

4

and rights and a mortgagor, and if she made payments, TBW would accept her as an authorized party to the debt and interest in the home; and TIA knew or should have known that records were falsified regarding the Plaintiff's information being "assigned" to Young. *Id.* at 6-7. Plaintiff contends that she was "reliant on the information that came from HAM and Trey Inman to be accurate. The real estate mortgage professionals had superior legal minds than she. The Defendants used their superior wit to induced [sic] the Plaintiff to believe that she had achieved her dream of home ownership through the purchase/funding transaction." *Id.* at 7. Plaintiff claims that TIA "participated in the scheme" because it was "motivated to attract more high volume loan closes" or because it was "hoping to attract additional referrals from HAM and TBW to service their loan closes." *Id.*

Plaintiff further claims that Defendant BANA committed "FHA Servicing Torts" by sending letters to her that were intended to "confuse and deceive" her. *Id.* at 7-8. She claims that BANA sent her acceleration of debt notices that "created more confusion than answers." *Id.* at 7. She also claims that BANA was "overly aggressive in its debt collection actions and factual was not is [sic] legal loan servicer." *Id.* at 8. In addition, she claims that she complained to BANA about the "torts related to the purchase money transaction," but it "chose to ignore" her request to investigate. *Id.* at 9. According to Plaintiff, Ms. Young became "agitated about the implication of

5

fraud and insisted that [BANA] stop communicating to the Plaintiff about the underlying loan." *Id.* Plaintiff also claims that BANA failed to provide complete information about the secured creditor upon receiving her "Qualified Written Request Letter." *Id.*

In the Complaint, Plaintiff asserts claims arising under both federal and state law. In the nine counts listed under "Damage Claims," Plaintiff asserts two claims that arise under specific federal statutes. *Id.* at 14. In Count 4, Plaintiff asserts a claim for damages against BANA "under the FDCPA statute per $1,000.00 occurrence, where PHJ acted on behalf of [BANA]." *Id.* In Count 5, Plaintiff asserts a claim, apparently solely against BANA, "for damages under TILA statute violation for actual damages of $4000.00 for failure to provide to the Creditor status. Additionally, [BANA] failed to provide a bona fide acknowledgement to escalate Ms. Underhill's toxic FHA loan problem." *Id.* Interpreting the Plaintiff's Complaint liberally, the Court finds that Plaintiff has asserted claims against BANA under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*

Plaintiff also asserts other claims that arise under Georgia law. She asserts "claims for damages by the breach of duty and breach of negligence per se due against [BANA]" and claims that BANA "failed in its legal duties under the FHA contract."

6

*Id.* She asserts a claim against BANA for attempted wrongful foreclosure. *Id.* She also asserts a claim for "libel damages and restoration of her name" because she has been "publically humiliated by the legal notices affecting her property in the Clayton County legal notices and by the misrepresented dunning letters with respect to her position as a tenant." *Id.* She seeks punitive and compensatory damages for negligence attributable to BANA under O.C.G.A. §§ 44-14-160 through § 162.4 "and under the FHA servicing conditions." *Id.* She also seeks to set aside any foreclosure sale or ejectment action by short sale, and "appropriate restraint to unwind any such pending sale." *Id.* Plaintiff also seeks a "judgment at law" against HAM and TIA because the "mortgage contract was tortuously approved by fraudulent lending practices" and she seeks damages from those Defendants "who used the closing and funding to deprive Ms. Underhill of her meaningful rights under the FHA contract in purchase of her home." *Id.* at 14-15. Finally, Plaintiff seeks "damages deemed appropriate by the court at trial with the right to supplement her claims upon discovery of more torts." *Id.* at 15.

## II.    DISCUSSION

There are multiple motions pending before the Court. The undersigned will first address the Plaintiff's Motion to Remand, then the Defendants' Motions to Dismiss, and finally, the Plaintiff's Motion to Amend.

A.    *Plaintiff's Motion to Remand*

Plaintiff has filed a Motion to Remand [12] in which she argues that this action must be remanded because Defendant HAM did not give its consent to the removal. She argues that the failure of HAM to give consent to the removal "deprives the court of personam jurisdiction over the litigants." Pl. Mot. to Remand [12] at 1. In her Motion to Remand, Plaintiff also requests that the Court strike the Defendants' Motions to Dismiss, and she further requests an extension of time to respond to the Motions to Dismiss.

The removal of state court actions to federal court is governed by 28 U.S.C. § 1441, which provides, in relevant part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

When a state court action is removed pursuant to 28 U.S.C. § 1441, the Court must make an independent determination regarding the appropriateness of removal before it resolves any pending motions. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see also University of South. Ala. v. American Tobacco*

*Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction" and remand is mandatory when a court determines that it lacks subject matter jurisdiction, notwithstanding the presence of other motions pending before the court).

The Supreme Court has held that federal courts may not "assume" the presence of subject matter jurisdiction and rule directly on the merits of an action without first finding that jurisdiction exists:

> Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.

*Steele Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (*quoting Ex parte McCardle*, 7 Wall. 506, 514 (1868)). Thus, any ruling made by a federal court that lacks subject matter jurisdiction is a nullity and either party, even the party that invoked the jurisdiction of the court, can attack jurisdiction at any time even after judgment is rendered. *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951) ("To permit a federal trial court to enter a judgment in a case removed without right from a state court where the federal court could not have original jurisdiction of the suit even in the posture it had at the time of judgment, would by the act of the parties

work a wrongful extension of federal jurisdiction and give district courts power the

Congress has denied them.").

In determining whether removal is appropriate under 28 U.S.C. § 1441, federal

courts must resolve all doubts against removal:

> Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 872, 85 L.Ed. 1214 (1941). Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (*citing Boyer v. Snap-on Tools Corp.*, 913 F.2d 108 (3d Cir. 1990); *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983)). A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts.

*University of South. Ala.*, 168 F.3d at 411. Moreover, as the party removing the action

to federal court, the defendant has the burden of establishing federal jurisdiction over

the action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).

The general test for whether a cause of action arises under federal law and is

therefore removable under 28 U.S.C. § 1441 requires that a court look only to the face

of the plaintiff's complaint to ascertain whether a claim has been asserted under

federal law. *See Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 84 (1989) ("The

presence or absence of federal jurisdiction is governed by the 'well-pleaded

complaint' rule."). "Under our long standing interpretation of the current statutory scheme, the question of whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 808 (1986) (*quoting Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)).

Under the well-pleaded complaint rule, "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant. . . . The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (*citing Gully v. First National Bank*, 299 U.S. 109, 112-113 (1936)). In *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983), the Supreme Court reiterated the principle that removal must be based solely upon the plaintiff's claim against the defendant:

> "Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case "arises under" federal law. "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."

*Franchise Tax Bd.*, 463 U.S. at 10-11 (emphasis in original) (*quoting Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) and *Gully v. First National Bank*, 299 U.S. 109, 112 (1936)); *see also In re Carter*, 618 F.2d 1093, 1100-01 (5th Cir. 1980) (for purposes of removal on the basis of a federal question, "[t]he federal controversy must be disclosed on the face of the complaint, unaided by the answer or by the petition for removal.").[1]

Thus, removal is generally proper under 28 U.S.C. § 1441 only if the plaintiff's "well-pleaded complaint" asserts a federal cause of action against the defendant. Exceptions to the well-pleaded complaint rule include civil rights actions and actions involving a claim in an area of law that is governed by a federal statute that preempts state laws, such as the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 185 *et seq.*, and the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq. See* 28 U.S.C. § 1443 (cases involving civil rights claims are removable); *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58 (1975) (state court action involving common law tort and contract claims related to employee benefits may be removed under 28 U.S.C. § 1441 because federal defense under ERISA preempts state law); *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists*,

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

390 U.S. 557 (1968) (state court action involving a breach of contract claim arising under a collective bargaining agreement may be removed under 28 U.S.C. § 1441 because LMRA preempts state law in claims involving labor relations); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-393 (1987) (explaining the "complete pre-emption doctrine" as an exception to the well-pleaded complaint rule: "On occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (*quoting Metropolitan Life Ins. Co.*, 481 U.S. at 65).

In this case, Defendant BANA removed this action on the basis of both federal question jurisdiction and diversity jurisdiction. *See* Notice of Removal [1] at 3-5. The Plaintiff's Complaint alleges that Defendant BANA violated two specific federal statutes: the FDCPA and TILA. In Count 4 of her claims for damages, Plaintiff asserts a claim for damages against BANA "under the FDCPA statute per $1,000.00 occurrence, where PHJ acted on behalf of [BANA]." Compl. at 14. In Count 5, Plaintiff asserts a claim against BANA "for damages under TILA statute violation for actual damages of $4000.00 for failure to provide to the Creditor status. Additionally, [BANA] failed to provide a bona fide acknowledgement to escalate Ms. Underhill's toxic FHA loan problem." *Id.* Thus, the undersigned finds that, under the well-pleaded

Complaint rule, the Plaintiff has brought two separate claims for damages based on alleged violations of federal law, giving this Court federal question jurisdiction over this case.

In Plaintiff's Motion to Remand, she does not argue that this Court lacks subject matter jurisdiction over this case, nor does she argue that it should be remanded on that ground. Instead, Plaintiff argues that the Court must remand the action on the ground that it lacks "personam jurisdiction" over the Defendants because Defendant HAM did not consent to the removal.[2] *See* Pl. Mot. to Remand [12] at ¶¶ 1, 4.

---

[2] The Court notes that Plaintiff did not seek remand on the ground that Defendant TIA failed to give its consent to removal in the Notice of Removal. TIA contends that its consent to removal was not required because it was a fraudulently joined party, and further, that the Court should construe its filing of a Motion to Dismiss as an indication of its consent to removal. *See* TIA Resp. [13] at 5. Pursuant to 28 U.S.C. § 1447(c), "[a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." Thus, when a plaintiff fails to file a motion to remand within thirty days of removal and cite to a procedural defect such as untimeliness or lack of unanimity, she thereby waives the right to challenge that non-jurisdictional defect in the removal procedure. *See Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 423 (5th Cir. 1990) ("The failure of all the defendants to join in the removal petition is not a jurisdictional defect. . . . Johnson waived his right to complain by engaging in discovery."); *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986) ("[T]he time limitation for removal is not jurisdictional, and, therefore, may be waived[.]"); *Loftin v. Rush*, 767 F.2d 800, 805 (11th Cir. 1985) ("The time limitation for removal is not jurisdictional but rather is modal or formal and may be waived."). Accordingly, the Court finds that, because Plaintiff failed to raise the issue of TIA's lack of consent in her Motion to Remand, she has waived her right to challenge the removal on that basis.

14

Pursuant to 28 U.S.C. § 1446, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Thus, the requirement that there be unanimity of consent in removal cases with multiple defendants does not require the consent of any defendant who has not been properly served. *See Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1208 (11th Cir. 2008) ("[A] defendant has no obligation to participate in any removal procedure prior to his receipt of formal service of judicial process."); *see also Johnson v. Wellborn*, 418 Fed.Appx. 809, 815 (11th Cir. 2011).

Although Plaintiff argues that HAM had been served at the time the case was removed, the evidence in the record establishes otherwise. Defendant BANA filed the Notice of Removal in this Court on August 7, 2013. *See* Notice of Removal [1]. Plaintiff has not provided any proof of service upon HAM at any time before that date. Instead, the only affidavit from a process server that Plaintiff has submitted to the Court indicates that an entity known as "American Home Mortgage, Inc." was served with a copy of the summons and Complaint through its registered agent in Orlando, Florida, on September 19, 2013. *See* Pl. "Motion in Opposittion [sic] to Defendant Bank of America, N.A.'s Response to Plaintiff's Combined Motions to Remand, Strike, and for Extension of Time to Respond to Defendant's Motion to Dismiss" [16] ("Pl. Reply to Mot. to Remand"), Ex. A. Even assuming that "American Home

15

Mortgage, Inc." was actually a reference to Defendant HAM, the affidavit indicates that American Home Mortgage, Inc. was served over a month after BANA filed the Notice of Removal in this Court. Thus, HAM's consent was not required on the Notice of Removal, as it had not been properly served at that time.[3] Accordingly, the undersigned **RECOMMENDS** that the Plaintiff's Motion to Remand [12] be **DENIED**.[4]

In Plaintiff's Motion to Remand, she also requests that the Court strike the Defendants' Motions to Dismiss. She argues that, because HAM has not consented to the removal, the Defendants' "motions and briefs before the court, are believed at best, may be premature or mostly void, as a matter of law." Pl. Mot. to Remand [12] at ¶ 4. The Court finds that Plaintiff has not established any ground for the Court to strike the Defendants' Motions to Dismiss and thus, her request to strike is **DENIED**.

---

[3] See discussion in Section II.D., *infra*, of Plaintiff's claims against Defendant HAM.

[4] If this case had been removed solely on the basis of federal jurisdiction, then the undersigned would likely have recommended that the Plaintiff's state law claims be remanded upon the dismissal of Plaintiff's federal claims. BANA stated in the Notice of Removal, however, that this case was removed on the basis of diversity jurisdiction as well as federal question jurisdiction. *See* Notice of Removal at 4. Although TIA is a citizen of Georgia, BANA argued that its citizenship need not be considered for diversity purposes because it had been fraudulently joined as a Defendant. *Id.* at 5. Because the Court finds that it has subject matter jurisdiction on the basis of a federal question, it declines to address the Defendants' contentions regarding the alleged fraudulent joinder of TIA.

Plaintiff further requests in her Motion to Remand an extension of time to respond to the Motions to Dismiss. She "seeks to have her combined respond [sic] to be submitted within 20 days after the entry date of HAM's initial response or a time deemed appropriate by this court." *Id.* at ¶ 8. The docket indicates that Plaintiff thereafter filed a response to the Defendants' Motions to Dismiss on October 3, 2013. *See* Pl. Resp. [19]. Accordingly, the Court **GRANTS** the Plaintiff's request for an extension *nunc pro tunc*, and will consider her response to the Defendants' Motions to Dismiss as timely filed.

B.     *Defendants' Motions to Dismiss*

Defendants BANA and TIA have filed Motions to Dismiss, arguing that all the claims asserted against them in the Complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

1.     Standard on a Motion to Dismiss

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true, but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's

17

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'–'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)) (other citations omitted).

Although the Supreme Court requires a plaintiff to allege sufficient facts to state a plausible claim for relief, because Plaintiff is proceeding *pro se* in this case, the Complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.*; *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed

18

so as to do justice"). Even though a *pro se* complaint is held to less stringent standards than formal pleadings drafted by attorneys, "the Court need not accept as true legal conclusions or unwarranted factual inferences." *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2006). Nothing in the leniency accorded a *pro se* filing excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Trawinski v. United Technologies*, 313 F.3d 1295, 1297 (11th Cir. 2002).

As noted above, a court ordinarily cannot consider matters outside the pleadings when evaluating a motion to dismiss under Rule 12(b)(6), but when a plaintiff has referred to documents in the complaint and such documents are central to the plaintiff's claims, a court may consider those documents as part of the pleadings in the case and may consider them in resolving a Motion to Dismiss. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

Moreover, the Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the

exhibits control. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

> Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.

*Id.*; *see also Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document, to be treated as part of the complaint for all purposes under Rule 10(c), Fed.R.Civ.P., reveals facts which foreclose recovery as a matter of law, dismissal is appropriate." (citation omitted)); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

In this case, Plaintiff has referred to various documents in the Complaint, including the Security Deed executed by Michelle Young on December 10, 2007, and letters she received from PHJ on behalf of BANA regarding the loan, and she has attached those documents to the Complaint. *See* Compl., Ex. A-G. Because Plaintiff

attached those documents to the Complaint, they are considered part of the Complaint for all purposes. FED. R. CIV. P. 10(c).

In addition, Defendant TIA has also submitted an exhibit in connection with its Motion to Dismiss, the Promissory Note signed by Michelle M. Young on December 10, 2007, indicating a promise to pay $182,3440.00 to Home America Mortgage, Inc. *See* TIA's Notice of Filing [9]. When a court is considering a motion to dismiss under Rule 12(b)(6), documents attached to the motion to dismiss may be considered if the document is both central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*."). "'Undisputed' means that the authenticity of the document is not challenged." *Day*, 400 F.3d at 1276. Because the document submitted by TIA appears to be central to the Plaintiff's claims, and because she has not challenged the authenticity of it, it may be considered as part of the pleadings in this case in resolving the Motions to Dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

2.     Plaintiff's Claims

Construing the Plaintiff's Complaint liberally, in consideration of her *pro se* status, the undersigned finds that Plaintiff has brought a claim against BANA under the FDCPA and TILA. Plaintiff has also asserted claims arising under state law, including attempted wrongful foreclosure, negligence, and fraud. Defendants argue that all of the claims asserted in the Complaint must be dismissed on the ground that Plaintiff has failed to state a claim for relief.

a.     Shotgun Complaint

Defendant BANA argues that Plaintiff's entire Complaint must be dismissed on the ground that it is a shotgun pleading. A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x. 368, 371 (11th Cir. 2005) (unpublished). Shotgun pleadings typically "contain several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). As a result, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief" when a

plaintiff presents a shotgun pleading. *Anderson v. District Bd. of Trs. of Central Fla. Community Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Shotgun pleadings also characteristically fail to specify which defendant is responsible for each act alleged. *Beckwith*, 146 F. App'x at 372 ("It is virtually impossible to ascertain what factual allegations correspond with each claim and which claim is directed at which defendant."). The Eleventh Circuit has "roundly, repeatedly, and consistently condemn[ed]" shotgun pleadings, because such pleadings "wreak havoc on the judicial system." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 (11th Cir. 2008); *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001).

In this case, the Court agrees with BANA that Plaintiff has filed a shotgun pleading. For example, Plaintiff's Complaint contains a section titled "Verified Complaint Introduction." Compl. at 9. In that section, Plaintiff states that she "gives Judicial Notice for this court to review and accept all pleadings, exhibits and foot notes with the same force and effect that is averred against the "tortuous actions" made by Defendants jointly and severally. Furthermore, she ascribes much of the "fraud" to TBW, who is not named as a Defendant. *See id.* at 3 ("Whereas, such fraudulent underwriting were common practices found in the massive torts investigated by the FHA's General Inspector applicable to TBW.").

Thus, Plaintiff's Complaint fails to set forth with sufficient clarity the factual allegations in support of each of the asserted claims and has failed to state what actions were taken by each Defendant that were allegedly in violation of the statutes cited in the Complaint. Furthermore, even if Plaintiff's Complaint were not a shotgun pleading, the Court finds that she has failed to state a claim for relief under any of the theories presented in the Complaint. Although the Plaintiff's specific factual allegations are sometimes difficult to discern, the Court has interpreted her Complaint liberally and will now examine her claims brought against BANA and TIA.

### b.    Plaintiff's claims against BANA

#### (1)    FDCPA

In Count 4 of the Complaint, Plaintiff asserts a claim for damages under the FDCPA solely against BANA. Compl. at 14. The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Specifically, it "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v.*

*Campbell*, 309 Fed. App'x 315, 319 (11th Cir. 2009) (*citing* 15 U.S.C. §§ 1692d, 1692e, 1692f).

In order to state a claim under the FDCPA, a plaintiff must allege sufficient facts to assert a plausible claim that a defendant is a debt collector as that term is defined in the statute and that it engaged in some act prohibited by the FDCPA, or failed to disclose information required by the FDCPA, in attempting to collect from Plaintiff on a consumer debt. *See Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). This claim fails at the outset because Plaintiff does not allege that Defendant BANA, or any other Defendant, has attempted to collect any debt from her. To the contrary, the allegations state that the mortgage loan was solely in the name of Michelle Young. Thus, Plaintiff is not the debtor, and was not the target of any alleged debt collection activity.

Furthermore, it is well-established that the FDCPA applies only to "debt collectors" and not to creditors or mortgage servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa v. BAC Home Loans Servicing LP*, No. 6:11-cv-1197-Orl-22DAB, 2012 WL 1176701, at *11 (M.D. Fla. April 9, 2012) (the "critical element is whether the defendant is a debt collector" as defined under the statute). The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of America Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the collection a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (internal citation omitted).

In the Complaint, Plaintiff asserts a claim for damages against BANA "under the FDCPA statute per $1,000.00 occurrence, where PHJ acted on behalf of [BANA]." Compl. at 14. She alleges that "[BANA] failed to provide, through their agent, a clear

and concise information with respect to the reconcilement of the debt and recoupment ordered through the U.S. Bankruptcy Court and sought to sale or foreclose without full disclosure of how the debt needed reconcilement." *Id.*

The undersigned finds that Plaintiff has failed to allege sufficient facts to demonstrate that BANA qualifies as a "debt collector" under the FDCPA. Plaintiff does not allege facts suggesting that BANA engages in a business in which the "principal purpose" is the collection of debts, and she does not allege facts indicating that BANA took any action to collect a debt owed to another entity. Instead, Plaintiff's allegations suggest that BANA was the servicer of the mortgage, or at least represented itself as the servicer. *See id.* at 4-5.

According to Plaintiff, Defendant BANA became the loan servicer after it replaced TBW as the loan servicer under an asset purchase agreement. *Id.* Plaintiff claims that Defendant BANA committed "FHA Servicing Torts" by sending letters to her that were intended to "confuse and deceive" her. *Id.* at 7-8. She claims that BANA sent her acceleration of debt notices that "created more confusion than answers." *Id.* at 7. She also claims that BANA was "overly aggressive in its debt collection actions and factual was not is [sic] legal loan servicer." *Id.* at 8. In addition, she claims that she complained to BANA about the "torts related to the purchase money transaction," but it "chose to ignore" her request to investigate. *Id.* at 9.

27

According to Plaintiff, Ms. Young became "agitated about the implication of fraud and insisted that [BANA] stop communicating to the Plaintiff about the underlying loan." *Id.* Plaintiff also claims that BANA failed to provide complete information about the secured creditor upon receiving her "Qualified Written Request Letter." *Id.*

Although Plaintiff makes the conclusory allegation that BANA was "overly aggressive in its debt collection actions," she does not allege that BANA was a "debt collector" under the FDCPA, nor does she allege facts supporting any finding that BANA would be considered a "debt collector" under the FDCPA. Moreover, she fails to explain what "debt collection actions" were specifically taken by BANA. As explained above, even if BANA had engaged in "debt collection actions," in order to be held liable for those actions under the FDCPA, it must be considered a "debt collector," as defined by the statute. It is not enough for a plaintiff to allege only that a bank engaged in debt collection activities; the FDCPA applies only to debt collectors and does not apply to a bank that takes actions to recover its own debts as a mortgage lender or servicer. Finally, the letter regarding the loan that Plaintiff attached to the Complaint as an exhibit indicates on its face that it came from PHJ, not BANA. *See* Compl., Ex. B.

The undersigned thus finds that Plaintiff has failed to state a plausible claim under the FDCPA against BANA because she has failed to allege any facts indicating

that BANA was a "debt collector" under the FDCPA. Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to the Plaintiff's FDCPA claim in Count 4 of the Complaint.

(2)     TILA

In Count 5 of the Complaint, Plaintiff asserts a claim against BANA under TILA. Compl. at 14. TILA requires disclosures as to the terms of a loan when the loan is first executed. Specifically, TILA was enacted to promote informed borrowing by requiring lenders to fully disclose to borrowers the terms of credit, *i.e.*, fees to be charged, interest rates to be applied, and other essential elements of the loan transaction. *Nussbaum v. Mortgage Service America Co.*, 913 F.Supp. 1548, 1553 (S.D. Fla. 1995).

In the Complaint, Plaintiff asserts a claim "for damages under TILA statute violation for actual damages of $4000.00 for failure to provide to the Creditor status. Additionally, [BANA] failed to provide a bona fide acknowledgement to escalate Ms. Underhill's toxic FHA loan problem." Compl. at 14. Again, significantly, Plaintiff does not allege that she was the actual borrower on the loan. Instead, her allegations in the Complaint, and the undisputed exhibits in the record, indicate that it was Michelle Young who executed the loan documents as the borrower, not Plaintiff. Plaintiff has not submitted any documents indicating that she signed the Note or

Security Deed, nor does she allege any other facts indicating that she has standing to bring any claim under TILA for a loan to which she was not a party.[5] *See Henry v. Guaranteed Rates, Inc.*, 415 Fed. App'x 985, 985-86 (11th Cir. Feb. 28, 2011) (the plaintiff "lacked standing to complain about any alleged misconduct regarding a loan to which she was not a party").

Furthermore, the Plaintiff fails to allege that BANA was involved in the initial mortgage loan transaction, and her allegations, along with the loan documents she has submitted, indicate that the original lender was HAM, not BANA. Thus, Plaintiff's allegations relating to BANA's actions years after the loan was obtained do not assert a valid claim under TILA, which is focused on the completeness of the creditor's disclosures at the time the loan agreement was consummated.

Finally, pursuant to 15 U.S.C. § 1640(e), a debtor must bring a claim for statutory damages under TILA within one year of the date of the occurrence of the violation. 15 U.S.C. § 1640(e). TILA violations occur when the transaction is

---

[5] Although Plaintiff alleges in the Complaint that HAM and TIA committed "torts" when it failed to put her name on the loan documents, she never explains how this information was hidden from her during the closing of the loan. All the documents in the record, including those submitted by Plaintiff, indicate that Michelle Young was the person who signed the loan documents and Plaintiff makes no factual allegations plausibly suggesting that Plaintiff was misled into believing otherwise. *See* Compl., Ex. A; *see also* discussion of Plaintiff's fraud claim against TIA in section c.2, *infra*.

consummated. *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984) (citing *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973)). Nondisclosure is not a continuing violation for purposes of the statute of limitations. *Id.* In addition, pursuant to Regulation Z, a debtor has the right to rescind certain loan transactions governed by TILA for up to three years if the lender fails to provide certain material disclosures. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3). The law is clear, however, that any right of rescission is extinguished after three years, such that no right to rescind can be raised beyond the three-year limitations period. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998).

In this case, the Promissory Note and the Security Deed indicate that the borrower on the loan was Michelle Young, not Plaintiff, and that the loan was closed on or about December 10, 2007. *See* Security Deed at 1, Compl., Ex. A; Note, TIA Ex. A. Plaintiff, however, did not file the Complaint initiating this action until July 8, 2013, more than five and a half years later. Because the one-year statute of limitations under TILA runs from the consummation of the loan transaction, and not from the date that Plaintiff allegedly became aware of any violation, the Plaintiff's claim for damages under TILA is barred by the statute of limitations.

Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to the Plaintiff's TILA claim in Count 5 of the Complaint.

### (3)    Attempted Wrongful Foreclosure

In Count 2 of the Complaint, Plaintiff asserts a claim against BANA for attempted wrongful foreclosure. Compl. at 14. To state a claim for wrongful attempted foreclosure under Georgia law, a plaintiff must allege sufficient facts to state a plausible claim that the party attempting to foreclose made a "knowing and intentional publication of untrue and derogatory information concerning the debtor's financial condition" and that he or she incurred damages as a direct result of such publication. *See Mayrant v. Deutsche Bank Trust Co. Americas*, Civil Action No. 1:10-CV-3094-TWT, 2011 WL 1897674, at *2 (N.D. Ga. May 17, 2011) (Thrash, J.) (*quoting Aetna Finance Co. v. Culpepper*, 171 Ga. App. 315, 319 (1984)).

The undersigned finds that Plaintiff has failed to state a plausible claim for wrongful foreclosure because she has failed to allege sufficient facts to establish that BANA made a "knowing and intentional publication of untrue and derogatory information" or that she suffered damages as a result. First, Plaintiff fails to allege any facts that BANA ever published anything about her financial condition at any time. Instead, her allegations in the Complaint, along with the exhibits in the record,

indicate that Michelle Young was the actual debtor on the loan, not Plaintiff. Thus, as explained above, Plaintiff has failed to show has she has standing to challenge any alleged misconduct regarding a loan to which she was not a party. *See Henry v. Guaranteed Rates, Inc.*, 415 Fed. App'x 985, 985-86 (11th Cir. Feb. 28, 2011) (the plaintiff "lacked standing to complain about any alleged misconduct regarding a loan to which she was not a party").

Furthermore, Plaintiff has failed to allege that, even if BANA had published any information about her, the information was "untrue" or "derogatory." Finally, she fails to allege how she was damaged by any alleged publication. Indeed, Plaintiff's own allegations acknowledge that the mortgage loan, regardless of whose name it was in, was in default. *See* Compl. at 6 (alleging that Plaintiff became "delinquent" on the loan in 2011). Plaintiff alleges no facts plausibly suggesting that the creditors' foreclosure or attempted foreclosure with regard to this defaulted mortgage in someone else's name was wrongful.

The undersigned thus finds that Plaintiff has failed to state a plausible claim against BANA for wrongful attempted foreclosure. Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's claim of attempted wrongful foreclosure in Count 2 of the Complaint.

33

(4)     Libel of Title to Land

In Count 3 of the Complaint, Plaintiff alleges that she has been "publically humiliated by the legal notices affecting her property in the Clayton County legal notices and by the misrepresented dunning letters with respect to her position as a tenant." Compl. at 14. She seeks "libel damages and restoration of her name and title, accordingly." *Id.*

Construing the Plaintiff's Complaint liberally, it appears that she has asserted a slander of title claim under O.C.G.A. § 51-9-11, which provides as follows:

> **§ 51-9-11. Slander of title**
>
> The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom.

O.C.G.A. § 51-9-11.

Plaintiff does not assert this claim against either BANA or TIA specifically. She complains only of the "legal notices affecting her property in the Clayton County legal notices." Compl. at 14. Thus, it is not clear whether Plaintiff intended to assert this claim against BANA. In any event, the undersigned finds that Plaintiff has failed to state a plausible claim for slander of title because she has failed to allege any facts indicating that BANA ever communicated any "libelous or slanderous words" to anyone which "falsely and maliciously" impugned the Plaintiff's title or otherwise

caused her to suffer damages. She has also failed to allege any facts indicating that BANA published any information about her that was untrue or libelous in any way. All of the facts show is that BANA threatened to execute a security deed based on an undisputed default on the mortgage. Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to Count 3 of the Complaint.

(5)    Negligence

In Count 1 of the Complaint, Plaintiff asserts a claim of "negligence per se" against BANA. Compl. at 14. In Count 6, she seeks punitive and compensatory damages for negligence attributable to BANA under O.C.G.A. §§ 44-14-160 through § 162.4 "and under the FHA servicing conditions." *Id.*

To state a claim for negligence under Georgia law, Plaintiff must allege sufficient facts to establish: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the duty. *Bradley Ctr., Inc. v. Wessner*, 296 S.E.2d 693, 695 (Ga. 1982); *see also Coote v. Branch Banking & Trust Co.*, 664 S.E.2d 554, 557 (Ga. Ct. App. 2008).

35

Defendant BANA argues that Plaintiff has failed to state a plausible claim of negligence because she has failed to allege sufficient facts to establish that it owed her any duty under the law. In general, a breach of a contractual duty gives rise to a breach of contract claim, not a tort. *See USF Corp. v. Securitas Sec. Servs. USA Inc.*, 699 S.E.2d 554, 558 (Ga. Ct. App. 2010). The Georgia Court of Appeals has held that a bank's alleged negligence in its performance of its obligations under a loan contract with a borrower is not generally subject to a tort claim in the absence of a specific legal duty arising outside the terms of the contract:

> So far as the record reflects, the only relationship between Buford and the bank was that which arose out of the note and security deed. In order to maintain an action ex delicto because of a breach of duty growing out of a contractual relationship, the breach must be shown to have been a breach of duty imposed by law and not merely the breach of a duty imposed by the contract itself. *Mauldin v. Sheffer*, 113 Ga.App. 874, 878, 150 S.E.2d 150. If there is no liability except that arising out of a breach of the express terms of the contract, the action must be in contract, and an action in tort cannot be maintained.

*Commercial Bank & Trust Co. v. Buford*, 243 S.E.2d 637, 638-39 (Ga. Ct. App. 1978); *see also S & A Indus. v. Bank Atlanta*, 543 S.E.2d 743, 748 (Ga. Ct. App. 2000) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.") (*quoting Traina Enterprises v. RaceTrac*

36

*Petroleum*, 525 S.E.2d 712 (Ga. Ct. App. 1999)); *Wallace v. State Farm Fire Co.*, 539

S.E.2d 509, 512 (Ga. Ct. App. 2000) ("Absent a legal duty beyond the contract, no

action in tort may lie upon an alleged breach of contractual duty.").

More recently, the Georgia Court of Appeals reiterated that principle when it

rejected an argument by a borrower that a bank owed him a general duty of care

beyond the terms of the loan contract. *Fielbon Dev. Co., LLC v. Colony Bank of*

*Houston County*, 660 S.E.2d 801, 856 (Ga. Ct. App. 2008).

> The negligent actions or inactions that Fielbon asserts against Colony
> Bank all arise out of the bank's administration of its construction loan,
> and the damages it claims flow directly therefrom. While evidence
> existed that the bank may have been negligent in managing and
> monitoring the loan, any duty the bank owed Fielbon in connection with
> the loan arose solely out of the parties' contractual relationship. And
> Fielbon failed to establish that the bank owed the company any duty
> independent of that contract in connection with the loan.

*Id.*

In reliance on that principle, judges in this Court have dismissed tort claims

brought by borrowers based on "negligence" or "negligent servicing" when the

plaintiff has asserted that a bank negligently performed its duties in servicing a

mortgage loan. *See, e.g.*, *Greaves v. Bank of America, N.A.*, No.

1:12-CV-02828-RWS, 2013 WL 1147531, *4 (N.D.Ga. Mar 19, 2013) (Story, J.)

("Plaintiff has not alleged any duty owed her by Defendants outside of the Security

Deed. Under Georgia law, Plaintiff may not assert a tort claim based on an alleged breach of contract."); *Fenello v. Bank of America, N.A.*, No. 1:11-CV-4139-WSD; 2013 WL 598395, *9 (N.D.Ga. Feb 15, 2013) (Duffey, J.) ("Plaintiffs do not allege any specific duty owed to them by Defendants, or how Defendants purportedly breached this duty").

In this case, the undersigned finds that Plaintiff does not allege sufficient facts to establish that BANA owed her any legal duty at all. As discussed, her allegations in the Complaint, along with the undisputed exhibits, establish that it was Michelle Young who was the borrower on the loan, not Plaintiff. Thus, Plaintiff does not have standing to assert any claim based on negligence in the servicing of a loan to which she was not a party. *See Henry v. Guaranteed Rates, Inc.*, 415 Fed. App'x 985, 985-86 (11th Cir. Feb. 28, 2011) (because the plaintiff was not a party to the loan, "she was not injured by any alleged misconduct of the defendants with respect to that loan"). Furthermore, even if the Plaintiff had alleged that she was a party to the loan, she has failed to allege any facts indicating that BANA owed her any legal duty other than what was provided in the loan agreement.

Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's claims of negligence in Counts 1 and 6 of the Complaint.

(6)      Injunctive Relief

Finally, in Count 7 of the Complaint, Plaintiff seeks to set aside any foreclosure sale or ejectment action by short sale, and "appropriate restraint to unwind any such pending sale." Compl. at 14. Because Plaintiff has failed to state a plausible claim against BANA under any of the legal theories presented in the Complaint, she has not established that she is entitled to injunctive relief or that she is otherwise entitled to an injunction or other restraint against any foreclosure sale on the Property. Accordingly, the undersigned **RECOMMENDS** that BANA's Motion to Dismiss [8] be **GRANTED** with respect to Plaintiff's claim in Count 7 of the Complaint.

c.      Plaintiff's Claims against TIA

(1)      FDCPA and TILA

As discussed above, in the Complaint, Plaintiff asserted her claims under the FDCPA and TILA solely against BANA, not TIA. *See* Compl. at 14. To the extent that Plaintiff intended to assert these claims against TIA, however, the undersigned finds that she has failed to state a claim against TIA for the same reasons discussed above in connection with her claims against BANA. First, Plaintiff, who alleges in the Complaint that Michelle Young was the actual borrower on the loan, has not established that she has standing to challenge any misconduct with respect to debt collection activity related to a loan to which she was not a party. *See Henry v.*

39

*Guaranteed Rates, Inc.*, 415 Fed. App'x 985, 985-86 (11th Cir. Feb. 28, 2011) (the plaintiff "lacked standing to complain about any alleged misconduct regarding a loan to which she was not a party"). Second, Plaintiff has failed to allege any facts to indicate that TIA was a "debt collector" under the FDCPA. Finally, because it is undisputed that the loan at issue closed in 2007, any claim brought under TILA is barred by the applicable statute of limitations. Accordingly, the undersigned **RECOMMENDS** that TIA's Motion to Dismiss [7] be **GRANTED** with respect to Plaintiff's claims in Counts 4 and 5 of the Complaint.

(2)    Fraud

In Count 8 of the Complaint, Plaintiff seeks a "judgment at law" against HAM and TIA because the "mortgage contract was tortuously approved by fraudulent lending practices" and she seeks damages from those Defendants "who used the closing and funding to deprive Ms. Underhill of her meaningful rights under the FHA contract in purchase of her home." Compl. at 14-15. The undersigned interprets this claim as asserting a claim of fraud against Defendant TIA.

Under Georgia law, to be actionable as fraud, misrepresentations must be acted upon by the person allegedly defrauded. O.C.G.A. § 23-2-52. The elements of civil fraud are: (1) a false representation by defendants; (2) scienter, (3) an intention to induce plaintiff to act or refrain from acting in reliance upon the representations;

40

(4) plaintiff's justifiable reliance on the false statements; and (5) damages resulting from such reliance. *See Hicks v. Sumter Bank & Trust Co.*, 604 S.E.2d 594, 596 (Ga. Ct. App. 2004).

Moreover, a plaintiff must plead fraud with particularity. *See* O.C.G.A. § 9-11-9; *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The particularity rule alerts defendants to "the precise misconduct with which they are charged and protect[s] defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotes omitted). The Eleventh Circuit has held that "under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*citing Fitch v. Radnor Industries, Ltd.*, No. 90-2084, 1990 WL 150110, at *2 (E.D. Pa. Sept. 27, 1990)); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

Furthermore, a claim of fraud must generally be premised on false representations related to existing facts or past acts, not to future acts or promises.

However, "[w]hile fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the future event will not take place." *Hayes v. Hallmark Apartments, Inc.*, 207 S.E.2d 197, 199 (Ga. 1974) (citations omitted); *see also Perimeter Realty v. GAPI, Inc.*, 533 S.E.2d 136, 147 (Ga. Ct. App. 2000) (a false promise made to induce one to enter into a contract is an exception to the rule that fraud cannot be premised on future promises).

In this case, Plaintiff fails to allege the required elements of fraud with sufficient particularity. The substance of Plaintiff's fraud claim against TIA appears to be based on her claim that several "torts" occurred at the December 10, 2007 closing of her loan, including that: Michelle Young had been "assigned" her income and job description on the mortgage loan application; HAM underwriters approved Ms. Young's fictitious income and job information without verification; Plaintiff's original purchase contract and earnest money were applied to Ms. Young's loan closing; Plaintiff was told to use the Quit Claim Deed and file it to preserve her title interests and rights and a mortgagor, and if she made payments, TBW would accept her as an authorized party to the debt and interest in the home; and TIA knew or should have known that records were falsified regarding the Plaintiff's information being "assigned" to Young. Compl. at 6-7.

42

Plaintiff contends that she was "reliant on the information that came from HAM and Trey Inman to be accurate. The real estate mortgage professionals had superior legal minds than she. The Defendants used their superior wit to induced [sic] the Plaintiff to believe that she had achieved her dream of home ownership through the purchase/funding transaction." *Id.* at 7. Plaintiff claims that TIA "participated in the scheme" because it was "motivated to attract more high volume loan closes" or because it was "hoping to attract additional referrals from HAM and TBW to service their loan closes." *Id.*

Plaintiff has failed to allege fraud with sufficient particularity because she does not specifically identify any particular alleged misrepresentation that anyone employed by TIA made to her. Nor does Plaintiff ever identify the person who allegedly made the purported statement that she claims were was false. Plaintiff also does not allege sufficient facts to state a plausible claim that the unidentified speaker knew that the statements were false at the time they were made. Plaintiff also fails to allege facts supporting a reasonable reliance on the alleged false statements, that is, what actions she took to her detriment in reliance on the supposed false statements.

If anything, Plaintiff appears to have been the beneficiary of any false statements. She has been residing in a home for which she could not obtain a mortgage solely in her own name, based on a loan apparently taken out by someone

43

else. In other words, she has been the beneficiary of someone else's mortgage as to which she has no personal debt or liability. If anything, any fraud would appear to have been on the lender, if a loan is applied for in the name of a different, more creditworthy borrower than the one who actually intends to reside in the property and make payments. In any event, Plaintiff fails to allege facts with particularity showing how she was defrauded.

In addition, even if the Plaintiff had asserted sufficient facts to state a plausible claim that anyone employed by TIA committed fraud against her during the closing of the loan in 2007, any fraud claim would be barred by the applicable statute of limitations. Under Georgia law, there is a four-year statute of limitations on fraud claims. O.C.G.A. § 9-3-31; *see Anthony v. Am. Gen. Fin. Servs., Inc.*, 626 F.3d 1318, 1321 (11th Cir. 2010). Because the loan closing and the alleged acts of fraud occurred in December of 2007, the statute of limitations on any fraud claim expired in or around December of 2011. Plaintiff did not file the Complaint in this action until July of 2013.

Although Georgia law provides that the statute of limitations may be tolled under certain circumstances, Plaintiff has not alleged any facts indicating that those circumstances would be present here. *See* O.C.G.A. § 9-3-96 ("If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been

debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."); *see also Anthony*, 626 F.3d at 1321.

Plaintiff alleges in the Complaint that she did not discover the alleged fraud until 2011. *See* Compl. at 6 (Plaintiff alleges that when she attempted to work out her "payment difficulties" she discovered that "she was not considered a mortgagor for the servicer to process a loan modification."). But it is undisputed that the loan closing and the alleged acts of "fraud" occurred in December of 2007. Plaintiff does not explain in the Complaint how the loan documents were kept hidden from her during the closing, nor does she explain how she was tricked into believing that she was the borrower on the loan when only Michelle Young signed the loan documents. Surely, Plaintiff knew that she signed no loan documents or any other documents during the closing. She does not allege that TIA did anything specific to conceal the alleged fraud from her. "Mere silence" is not sufficient to toll the statute of limitations unless there is a duty to make a disclosure because of a special relationship of trust and confidence between the parties. *Shipman v. Horizon Corp.*, 267 S.E.2d 244, 245-46 (Ga. 1980); *see also Bray v. Dixon*, 338 S.E. 2d 872, 896 (Ga. Ct. App. 1985) (*citing Shipman* for the same proposition).

45

Accordingly, for all these reasons, the undersigned **RECOMMENDS** that TIA's Motion to Dismiss [7] be **GRANTED** with respect to Plaintiff's claim of fraud in Count 8 of the Complaint.

### (3)    Other Claims

Although Plaintiff's primary claim against TIA appears to be her claim for fraud in Count 8, it is not clear whether she intended to assert any of her other claims for damages or injunctive relief against TIA. To the extent that Plaintiff intended to assert any of these claims against TIA, the undersigned finds that she has failed to state a claim on the same grounds discussed above in connection with her claims against BANA. Accordingly, the undersigned **RECOMMENDS** that TIA's Motion to Dismiss [7] be **GRANTED** in its entirety.

### C.    *Plaintiff's Motion to Amend*

After Defendants BANA and TIA filed their Motions to Dismiss, the Plaintiff filed a "Plaintiff's Motion in Opposition [sic] to Defendant's Motion to Dismiss and Plaintiff's Request to Amend Complaint" [18] ("Motion to Amend"), and a "Brief in Opposition [sic] to Defendant's Motion to Dismiss and Plaintiff's Request to Amend Complaint" [19] ("Pl. Br."). Plaintiff argues that she has a right to amend "as a matter of course so long as no responsive pleading has been filed." Pl. Br. [19] at 5-6.

Plaintiff is incorrect that she has a right to amend her Complaint "as a matter of course." While that was previously the rule under the Federal Rules of Civil Procedure, that is no longer the case. Rule 15(a) of the Federal Rules of Civil Procedure governs the amendments of pleadings before trial. Rule 15(a) states that a party "may amend its pleading once as a matter of course" within 21 days after serving the pleading, or, if the pleading is one in which a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever is earlier. FED. R. CIV. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

In this case, the Defendants both filed Motions to Dismiss under Rule 12(b)(6) on August 14, 2013. Thus, pursuant to Rule 15, the Plaintiff had 21 days after service of those motions in which to amend her Complaint "as a matter of course." That means that her right to amend the Complaint without seeking leave of Court expired on or about September 4, 2013. Plaintiff did not file an Amended Complaint on or before that date, however. Moreover, she did not file her Motion to Amend until October 3, 2013. Accordingly, under Rule 15(a), the Plaintiff may not amend her Complaint without leave of Court or written consent of the opposing party. FED. R.

CIV. P. 15(a)(2). Both Defendants have opposed Plaintiff's request to amend the Complaint. *See* TIA Reply Br. [21]; BANA Reply Br. [22]. Thus, the Plaintiff may not amend her Complaint without leave of the Court, and the court "should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).

The Eleventh Circuit has elaborated on the meaning of the phrase "when justice so requires," summarizing the rule as follows:

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

*Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir. 1992) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision whether to grant leave to amend is within the sound discretion of the trial court, but, in denying leave to amend, the court should state a specific reason justifying denial. *Foman*, 371 U.S. at 182 (1962); *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993); *see also Smith v. Duff & Phelps, Inc.*, 5 F.3d 488, 493 (11th Cir. 1993); *Hester v. International Union of Operating Engineers*, AFL-CIO, 941 F.2d 1574, 1578 (11th Cir. 1991).

Furthermore, the Eleventh Circuit has repeatedly held that "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach

48

a copy of the proposed amendment." *Long v. Satz*, 181 F.3d 1275, 1279 (11th Cir. 1999) (citing *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.")); *see also Mizzarro v. Home Depot*, 544 F.3d 1230, 1255 n.4 (11th Cir. 2008) ("Although submitting a proposed amended complaint is good practice and we highly recommend it, our case law makes clear that failing to do so is not a basis for denying leave to amend. A motion for leave is sufficient if the motion itself "set[s] forth the substance of the proposed amendment[.]" (quoting *Long*, 181 F.3d at 1279)); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361-62 (11th Cir. 2006) ("the movant must either attach a copy of the proposed amendment to the motion or set forth the substance thereof").

In this case, although Plaintiff has requested leave to amend the Complaint to correct the deficiencies addressed in the Defendants' Motions to Dismiss, she failed to attach a copy of the proposed amendment or to set forth the substance of the proposed amendment. Plaintiff states only as follows:

> After reviewing her petition through the lens of Defendants [sic] motions to dismiss, Plaintiff agrees that her complaint needs to be more clear and concise and needs to identify with more specificity the wrongs that's [sic] she has suffered at the hands of Defendants. Thus Plaintiff urges this Court that it would allow her to cure any alleged defects in her

complaint by granting her opportunity to amend her complaint in
accordance with the provisions of Rule 15(a), Fed. R. Civ. P.

Pl. Br. [19] at 7.

Plaintiff does not offer any indication as to how she would amend the
Complaint to state a claim under any of the legal theories presented. Nor does she
explain how she would be able to correct any of the deficiencies presented in the
Defendants' Motions to Dismiss. In particular, the Plaintiff does not offer any
indication that she would be able to establish that she has any standing to bring any
of her claims based on alleged misconduct with respect to the loan, when her
allegations in the Complaint, along with the undisputed exhibits, establish that only
Michelle Young was the borrower on the loan, not Plaintiff.

When a complaint fails to state a claim for relief, a district court may grant a
plaintiff leave to amend subject to reasonable conditions and limitations. *Garfield v.
NDC Health Corp.*, 466 F.3d 1255, 1270 (11th Cir. 2006). The leniency afforded to
*pro se* litigants, however, "does not give a court license to serve as a *de facto* counsel
for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an
action." *GJR Inv., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th
Cir. 1998) (citation omitted). A district court need not allow an amendment when
there has been undue delay, when allowing an amendment would cause undue

50

prejudice to the opposing party, or when an amendment would be futile. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). In this case, the undersigned finds that, because the Plaintiff has failed to attach a copy of her proposed amendment, or to set forth the details of any proposed amendment, her Motion to Amend must be denied on the grounds of futility. Plaintiff has not shown that any proposed amendment would cure the defects discussed above; thus, any amendment would likely be futile.

Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion to Amend [18] be **DENIED**.

D.    *Plaintiff's Claims Against HAM*

In addition to her claims against BANA and TIA, discussed above, Plaintiff has also named Home America Mortgage, Inc. ("HAM") as a Defendant in this action. Plaintiff seeks a "judgment at law" against HAM because the "mortgage contract was tortuously approved by fraudulent lending practices" and she seeks damages from those Defendants "who used the closing and funding to deprive Ms. Underhill of her meaningful rights under the FHA contract in purchase of her home." Compl. at 14-15.

The Court discussed the Plaintiff's lack of service against HAM in its discussion of Plaintiff's Motion to Remand, *supra*. As of this date, Plaintiff has not provided any proof of proper service upon HAM. On September 25, 2013, Plaintiff submitted an affidavit from a process server indicating that an entity known as

51

"American Home Mortgage, Inc." was served with a copy of the summons and Complaint through its registered agent in Orlando, Florida, on September 19, 2013. *See* Pl. Reply to Mot. to Remand [16], Ex. A. Plaintiff has not submitted any evidence indicating that the Defendant named in this case, "Home America Mortgage, Inc." was ever served. For that reason, the undersigned **RECOMMENDS** that all claims against HAM be **DISMISSED** without prejudice. *See* FED. R. CIV. P. 4(m).

Furthermore, on September 26, 2013, HAM filed a "Notice of Entry of Confirmation Order and Permanent Injunction" [17] ("Notice of Bankruptcy") in this case, stating that, on November 24, 2009, it filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court for the Middle District of Florida. *See* HAM's Notice of Bankruptcy [17] at 1. According to HAM, the Bankruptcy Court issued an order enjoining any entity who holds a claim against HAM that arose before the effective date of the plan from asserting or continuing any action against it.

> On July 21, 2011, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors (the "Plan") in the Bankruptcy Case. Pursuant to 11 U.S.C. § 1141 and the Confirmation Order, and except as otherwise provided in the Plan and the Confirmation Order, on and after the effective date of the Plan, which has occurred, all persons who have held, currently hold, or may hold claims against or interests in HAM that arose prior to the effective date of the Plan (including all Governmental

Authorities) are permanently enjoined from, on account of such claims or interests, taking any of the following actions, either directly or indirectly, against or with respect to HAM, other parties identified in the Plan and Confirmation Order or any of their respective properties: (i) commencing or continuing in any manner any action or other proceeding of any kind; (ii) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or attaching any properties pursuant to the foregoing; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind; (iv) asserting or effecting any setoff, recoupment, or right of subrogation of any kind against any Claim or Cause of Action; (v) taking any act, in any manner, in any place whatsoever, that does not conform to, comply with, or that is inconsistent with any provision of the Plan. Moreover, pursuant to the confirmed Plan, all injunctions or stays provided for in the Bankruptcy Code remain in full force and effect.

*Id.* at 2-3 (footnote omitted).

Accordingly, assuming that "American Home Mortgage, Inc." was actually a reference to Defendant HAM, and that Plaintiff had established that she had effected proper service on HAM, the Confirmation Order would prohibit the Plaintiff from pursuing her claims against HAM in this case.

## III.   CONCLUSION AND RECOMMENDATION

For the reasons discussed above, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss [7][8] be **GRANTED** and that the Plaintiff's claims against BANA and TIA be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against HAM be **DISMISSED** without prejudice.

53

**IT IS FURTHER RECOMMENDED** that the Plaintiff's Motion to Remand [12] be **DENIED** and her Motion to Amend [18] be **DENIED**.

**IT IS ORDERED** that Plaintiff's request to strike the Defendants' Motions to Dismiss, which is contained in her Motion to Remand [12], be **DENIED**, and that Plaintiff's request for an extension of time in which to respond to Defendants' Motions to Dismiss, which is also contained in her Motion to Remand [12], be **GRANTED** *nunc pro tunc*.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO ORDERED and RECOMMENDED** this 15th day of January, 2014.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE